**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WENDY WOEHRMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-1340-RHH |
| | ) | |
| | ) | |
| FRANK J. BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Wendy Woehrmann's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court reverses and remands the Commissioner's decision.

## I.     Background

The Court adopts the statement of facts set forth in Woehrmann's statement of facts (ECF No. 16-1) and Defendant's response (ECF No. 17-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano shall be substituted for Martin O'Malley as the defendant in this suit. *See* 42 U.S.C. § 405(g).

On or about April 29, 2019, Woehrmann applied for DIB, alleging that she has been unable to work due to disability since November 10, 2018. (Tr. 106.) Woehrmann alleged disability due to residuals from lumpectomy, right arm pain/swelling-lymphadenia, lower back/kidney pain, major depressive disorder, osteopenia, migraines, high blood pressure, bilateral hip pain/arthritis, pain from injured ankle/tendonitis, and cognitive dysfunction. (Tr. 106.) Her application was initially denied and denied again at the reconsideration stage. (Tr. 105-120, 121-137.) Then, she filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 155-156.) On November 1, 2023, the ALJ held a hearing on Woehrmann's claim.[2] (Tr. 40-85.) Woehrmann was represented by counsel at the hearing, and an impartial vocational expert both testified. *Id.*

In a decision issued on November 14, 2023, the ALJ found Woehrmann was not disabled as defined in the Act from the alleged onset date through the date she was last insured. (Tr. 11-39.) On January 9, 2024, Woehrmann filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 236-237.) On August 27, 2024, the Appeals Council denied Woehrmann's request for review, and adopted the ALJ's decision in full. (Tr. 1-6.)

## II. Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity

---

[2] Woehrmann appeared for a hearing on March 1, 2023, but the ALJ determined they could not proceed because Woehrmann was babysitting at the time, and the hearing was rescheduled for June 8, 2023. Woehrmann failed to appear for the hearing on June 8, 2023, but her counsel appeared.

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Woehrmann met the insured status requirements through December 31, 2021, and has not engaged in substantial gainful activity from the alleged onset date of November 10, 2018, through her last insured date of December 31, 2021. (Tr. 16.) Next, the ALJ found that Woehrmann has the following severe impairments: depression, anxiety, headaches, residual effects from right breast cancer treatment, and chronic obstructive pulmonary disease ("COPD"). (Tr. 17.) The ALJ found Woehrmann's hypertension, obesity, kidney cyst, osteoarthritis, suppurative otitis media of the right ear, systolic murmur, and osteopenia were non-severe impairments. (*Id.*) The ALJ noted there was an assessment of left breast cancer in 2023, but found there is insufficient evidence to establish left breast cancer as a medically determinable impairment through the date last insured of December 31, 2021. (*Id.*)

The ALJ determined that Woehrmann did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 17.) The ALJ also determined that, during the relevant time period, Woehrmann had the residual functional capacity to perform light work with the following additional limitations:

> [Claimant] could have had occasional exposure to humidity and wetness; can have had occasional exposure to dust, odors, fumes, and pulmonary irritants; could never have had exposure to extreme cold; can never have had exposure to extreme heat; was limited to perform simple, routine, and repetitive tasks, but not at a production rate pace  (e.g., no assembly-line work); was limited to perform simple work-related decisions; is limited to tolerating few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; could have had occasional interaction with supervisors; could have had occasional contact with co-workers with no tandem tasks or team-type activities; could have had no contact with the public; could not reach overhead to the right; and could work in moderate noise.

(Tr. 22-23.) The ALJ found that Woehrmann was unable to perform any past relevant work. (Tr. 31.) Woehrmann was 52 years old and considered a younger individual on the date last insured, and subsequently changed age category to closely approaching advanced age. (Tr. 32.) She has at least a high school education. (*Id.*) The ALJ found that transferability of job skills is not material. (*Id.*) Based on the foregoing, the ALJ found that jobs existed in significant numbers in the national economy that Woehrmann could perform. (*Id.*) These jobs include garment sorter (Dictionary of Occupational Titles (DOT) No. 222.687-014, light exertion level, SVP 2, unskilled, approximately 204,000 jobs in the national economy), office helper (DOT No. 239.567-010, light, SVP 2, unskilled, approximately 63,310 jobs in the national economy), and garment bagger (DOT No. 920.687-018, light, SVP 1, unskilled, approximately 9,919 jobs in the national economy). (Tr. 32-33.) Therefore, the ALJ concluded that Woehrmann was not disabled, as defined in the Act, from November 10, 2018, through December 31, 2021. (Tr. 33.)

## IV.     Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-*

*Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.      Discussion

Woehrmann argues the ALJ erred in three overarching ways: (1) the ALJ's decision fails to properly evaluate the medical opinion evidence; (2) the physical RFC is not supported by medical evidence; and (3) the ALJ's decision lacks a proper evaluation of Woehrmann's pain and other subjective reports. Defendant responds that the ALJ complied with the applicable regulations and created an RFC that is supported by substantial evidence on the record as a whole.

### A. Medical Opinion Evidence

Woehrmann argues that the ALJ erred in evaluating the medical opinions of non-examining state agency consultants Susan Rosamond, M.D., James Schell, M.D., Charles

Watson, Psy.D., and J.Edd Bucklew, Ph.D; and consultative examiners Nirmala Mathew, M.D., and Shea Voelker, Psy.D. Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations.

When evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any weight to opinion evidence. 20 C.F.R. § 404.1520(a). Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors. 20 C.F.R. § 404.1520c(b)(2). Of these factors, an ALJ must explain how he considered the factors of supportability and consistency in his decision but need not explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2).[3]

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how she considers the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).

The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In considering opinion evidence, an ALJ can be

---

[3] The other factors include the relationship with the claimant, specialization, and other factors which can include whether additional evidence was submitted after the date of the opinion. 20 C.F.R. § 404.1520c(c)(3-5). An ALJ is not required to address all factors in her opinion.

justified in rejecting an opinion if it contains no explanation of limitations despite containing areas where the doctor could explain the limitations found. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form"); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).

Woehrmann argues that in assessing each medical opinion, the ALJ failed to evaluate their supportability, and although the ALJ provides summaries of medical evidence dated after the opinion, she fails to explain how the findings are inconsistent with the opinion and instead provides a narrative discussion of how the medical records/findings support and are consistent with the ALJ's RFC. Defendant responds that Woehrmann "oversimplifies the ALJ's analysis," and the ALJ set out evidence from the record to illustrate why each opinion was or was not supported by and consistent with the record.

"No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence." *Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *5 (E.D. Mo. Mar. 9, 2022); *see also Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was

reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination). The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022); *see also Pipkins*, 2022 WL 218898, at *4 ("Because the ALJ's cursory statement neither articulates the persuasiveness of [the doctor's] opinion nor explains the supportability or consistency factors in evaluating the opinion, it runs afoul of the Regulations."). In light of the foregoing principles, the undersigned agrees that the ALJ's analysis of the medical opinions is flawed.

Here, the record contains three medical opinions regarding Woehrmann's mental limitations: the opinions of non-examining state agency consultants Charles Watson, Psy.D. and J.Edd Bucklew, Ph.D, and the opinion of consultative examiner Shea Voelker, Psy.D.

Drs. Watson and Bucklew submitted their opinions on April 2, 2020, and May 12, 2020, respectively. (Tr. 112-118, 129-134.) After a review of records available, both doctors opined that "Claimant would be capable of performing simple, repetitive tasks. Claimant would require work environment where public contact or contact with co-workers is not a primary responsibility but rather contact is incidental, occasional and brief in nature." (Tr. 117, 134.) Dr. Bucklew also opined that Woehrmann can complete tasks with fixed instruction and procedure and without rapidly paced procedures; is limited to less stressful social interaction; is limited to less complex instruction due to depression; and has depression that limits persistence and focus to less complex tasks. (Tr. 133-134.) The ALJ found these opinions to be "partially persuasive." (Tr. 28.)

Dr. Shea Voelker conducted a psychological consultative exam on March 4, 2020. (Tr. 572-578.) She opined that Woehrmann had marked limitations in all four of the paragraph B criteria. (Tr. 577.) She further opined that Woehrmann does not appear able to manage benefit payments in her own interests. (Tr. 577-578.) The ALJ found Dr. Voelker's opinion to be not persuasive.

In evaluating the opinions of the state agency physicians, the ALJ recounted some of the medical records summarized by them. In separately evaluating the opinion of Dr. Voelker, the ALJ recounted some of the observations and symptoms identified during Voelker's consultative exam. The ALJ further explained that the evidence of normal judgment and shopping in stores is not consistent with Dr. Voelker's opinion that Woehrmann does not appear able to manage benefit payments in her own interest.

Then, in both of the aforementioned evaluations, the ALJ set out the same evidence and explanation verbatim:

> However, a March 4, 2020 consultative examination report indicated that the claimant was able to answer questions appropriately and was able to follow single and multi-step commands without difficulty and indicated that on exam, the claimant had no fatigability following rapid, repetitive motion, was oriented to person, place, and time, remembered 3 words immediately and after five minutes, could perform simple addition and multiplication, had good insight, had normal general fund of knowledge, maintained good eye contact, showed no evidence of hallucinations or delusions, showed no evidence of impaired judgment, showed no evidence of significant memory impairment, had normal affect, and was able to understand and did follow directions (Exhibit B5F). In addition, a July 20, 2021 record indicated that on exam, the claimant was alert and oriented to person, place, and time, had normal mood, had normal behavior, had normal thought content, and had normal judgment (Exhibit B10F, page 298). Also, an August 20, 2021 record indicated that on review, the claimant was negative for depression and suicidal ideas and indicated that on exam, the claimant had normal mood and affect, had normal behavior, and had normal thought content (Exhibit B10F, page 269). Also, in a December 6, 2019 Function Report, the claimant indicated that she watches television, spends time with others, shops in stores, drives, is able to pick up small items, is able to do light dishes, and is able to do small loads of laundry (Exhibit B6E). This evidence is consistent with a finding that the claimant

> retained the functional abilities in the above residual functional capacity through the date last insured of December 31, 2021, and through the date last insured of December 31, 2021, the undersigned accounted for the combination of the claimant's impairments and symptoms, such as pain, headaches, dizziness, mood swings, anxiety, cognitive issues, and memory issues, with the limitations in the above residual functional capacity, which include nonexertional mental limitations.

(*Compare* Tr. 28-29 (evaluation of opinions of Drs. Watson and Bucklew) *with* Tr. 29-30 (evaluation of opinion of Dr. Voelker)). The ALJ's use of the exact same language to evaluate opinions found partially persuasive and not persuasive does not convince the Court that meaningful review has taken place. The ALJ's mere summary of certain medical records does not constitute an explanation of the degree to which this objective medical evidence supports the medical opinions expressed.

Defendant defends the evaluation by stating "the ALJ contrasted evidence that would support a greater degree of limitation with evidence that would support the RFC limitations found." (ECF No. 17, at 7.) While this may be true, it is insufficient. In order to properly evaluate the medical opinion evidence, the regulations direct the ALJ to specifically address the supportability of the medical opinion itself, not the supportability of the RFC. *See, e.g., Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (finding remand required where the ALJ discredited a physician's opinion without discussing factors contemplated in the regulation; stating, "The failure to comply with SSA regulations is more than a drafting issue, it is legal error."); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (finding remand required because "while the ALJ adequately evaluated the supportability of [the plaintiff's physician's] opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation").

To be clear, an ALJ is not required to adopt all of the limitations from every medical opinion, even if they find part of the opinions persuasive. *McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024). But an ALJ must explain how they considered both consistency and supportability when determining how persuasive a medical opinion or finding is. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ's copied-and-pasted comparison of medical records to the ALJ's RFC determination does not sufficiently articulate the consistency or supportability of the medical opinions.

Defendant notes that the ALJ's findings as to Woehrmann's mental limitations were "largely consistent" with the findings of Drs. Watson and Bucklew. To the extent Defendant suggests this renders any deficiency in the ALJ's evaluation to be harmless error, the undersigned disagrees. In using copied-and-pasted analysis to conclude that the opinions of non-examining state agency consultants were partially persuasive and the opinion of a consultative examiner was not persuasive, the ALJ did not commit harmless error. *See, e.g., Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021) ("In short, the ALJ's failure to address the supportability of Dr. Froman's opinion in finding the opinion less persuasive than the state agency reviewing physicians, even though Dr. Froman's was the only physician to examine Starman, certainly provides an indication that the ALJ's decision may have been different if he considered the supportability of Dr. Froman's opinion.").

Similar errors arise in the ALJ's evaluation of the persuasiveness of the medical opinion evidence regarding Woehrmann's physical limitations. Non-examining state agency consultants Susan Rosamond, M.D., and James Schell, M.D. submitted their opinions April 8, 2020, and May 13, 2020, respectively. (Tr. 105-112, 122-129.) Both state agency physicians reviewed the medical records available at the time of their respective reviews and found that Woehrmann had

no severe physical medically determinable impairments. (*Id.*) Nirmala Mathew, M.D. conducted a consultative exam on March 4, 2020, and opined that Woehrmann appears to have no cognitive deficit or focal neurological deficit. (Tr. 581-590.)

The ALJ found the state agency consultants' opinions to be not persuasive and found Dr. Mathew's opinion to be partially persuasive. The ALJ evaluated the opinions in a similar manner to the evaluation of the medical opinions regarding mental limitations—summarizing medical records without explaining the degree to which the records support or do not support the medical opinions expressed. After summarizing medical records, the ALJ stated in both evaluations:

> The evidence is consistent with a finding that the claimant had exertional, manipulative, environmental, and nonexertional mental limitations through the date last insured of December 31, 2021, and through the date last insured of December 31, 2021, the undersigned accounted for the combination of the claimant's impairments and symptoms, such as pain, weakness, headaches, fatigue, malaise,[4] swelling, numbness, dizziness, falls, confusion, memory issues, anxiety, and mood swings, with the limitations in the above residual functional capacity, which include a limitation to work at the light level with additional manipulative, environmental, and nonexertional mental limitations.

(*Compare* Tr. 27 (evaluation of opinions of Drs. Rosamond and Schell) *with* Tr. 28 (evaluation of opinion of Dr. Mathew)).

The ALJ ultimately imposed an RFC with greater physical restrictions than the medical opinions assessed herein, and therefore, Defendant takes issue with Woehrmann's criticisms of the ALJ's evaluation that resulted in a more favorable physical RFC. Nevertheless, the ALJ's purported analysis of the medical opinion evidence is insufficient to withstand meaningful review. Again, the evidence summarized by the ALJ to purportedly articulate the persuasiveness of the medical opinions does not constitute an explanation, and the ALJ's subsequent explanation that said evidence is consistent with the ALJ's RFC does not fulfill the ALJ's duty to assess the

---

[4] The evaluation of the state agency consultants' opinions does not reference the symptoms of fatigue or malaise. Otherwise, this excerpt is repeated verbatim in both sections.

medical opinions independently and prior to formulating the RFC. *See, e.g., Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination); *Doss v. Soc. Sec. Admin.*, No. 4:25-CV-00408-WJE, 2026 WL 456846, at \*4 (W.D. Mo. Feb. 18, 2026) ("When an ALJ evaluates medical opinions through the lens of an already-formulated RFC, the resulting analysis is insufficient."); *Viessman v. Saul*, No. 4:19-CV-04063-VLD, 2020 WL 133431, at \*17 (D.S.D. Jan. 13, 2020) ("The ALJ should first evaluate which expert medical opinions are best supported by the record as a whole, *then* formulate the RFC, not formulate the RFC and then adopt the medical opinions that are consistent [with] the ALJ's pre-conceived version of the RFC.") (emphasis in the original)).

In sum, the Court is unable to determine on this record whether the ALJ's assessment of the medical opinion evidence is based on substantial evidence of the record as a whole, and the case must be remanded for clarification. On remand, the ALJ must fully evaluate and explain the supportability and consistency of all medical opinion evidence in accordance with 20 C.F.R. § 404.1520c. Because remand is required for revaluation of opinion evidence, the Court will not address Plaintiff's remaining arguments. *See, e.g., Hirner*, 2022 WL 3153720, at \*10.

Upon reconsideration, the ALJ may well determine that Woehrmann is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of

- 14 -

benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

## VI.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

Dated this 27th day of March, 2026.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE